## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EARNEST CAGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-1209-R |
| | ) | |
| REXON INDUSTRIAL CORP., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before this Court is Defendant Rexon Industrial Corp., Ltd.'s ("Rexon" or "Defendant") Motion to Dismiss (Doc. 3). The matter is fully briefed and at issue. *See* Docs. 3, 9–10, 13. For the reasons stated herein, the Court GRANTS Defendant's motion.

## I. Background

Plaintiff brings a products liability claim against Defendant. Doc. 1-2, at 2–4. Plaintiff alleges that Defendant "designe[d], manufacture[d], teste[d], supplie[d], s[old], and/or distribut[ed] . . . a Craftsman portable table saw, Model No. 137.415030 . . . ." *Id*. Plaintiff purchased the Craftsman table saw ("Saw") in 2014. *Id*. On November 24, 2014, Plaintiff—"us[ing] the . . . Saw in a reasonably foreseeable manner and as intended"— suffered severe injuries. *Id*. These injuries were caused by a defect in the Saw that "rendered it unreasonably dangerous when used in ordinary and foreseeable ways." *Id*. The defect "existed when the . . . Saw left the possession of Defendant," and Defendant acknowledged its existence "by issuing a 'Recall Letter' to all purchasers in March of 2017." *Id*.

Defendant moves to dismiss Plaintiff's complaint for lack of personal jurisdiction, insufficient service of process, and failure to state a claim. *See* Doc. 3, at 8 (citing Fed. R. Civ. P. 12(b)(2), (5)–(6)). As the Court dismisses this suit because it lacks personal jurisdiction over Defendant, it will focus on the jurisdictional facts alleged by both parties.

According to its motion, Defendant is a Taiwanese corporation with its principal place of business in Taichung, Taiwan (Republic of China). *See* Doc. 3, at 9; Doc. 3-1, at 1.[1] Defendant avers that it

- has no offices, employees, or property in Oklahoma;
- has no bank or financial accounts in Oklahoma;
- has never targeted Oklahoma as part of a marketing effort;
- has never entered into a contract in Oklahoma or contracted with any company incorporated in or organized under the laws of Oklahoma;
- pays no Oklahoma state taxes;
- has no authorized agent for service of process in Oklahoma; and
- has not registered to do business in Oklahoma.

*See* Doc. 3, at 9–10; Doc. 3-1, at 1–2. Significantly, "Rexon has not shipped any products directly to . . . Oklahoma," including the Saw, during any relevant time period. Doc. 3-1, at 2. Defendant sold the Saw to Sears, Roebuck, and Co. on October 9, 2014; it was delivered to the port in Shanghai, China, and shipped "free on board" to a location that Sears specified. *Id.* at 3; *see also* Doc. 3, at 10–11. Title to the Saw transferred from Defendant to Sears before it left China, with Sears assuming risk of loss and assuming responsibility for the Saw's transport and its final distribution location. *Id*. "No units of

---

[1] In support of its jurisdictional allegations, Defendant has attached the declaration of Jeff Chen, a Rexon employee. *See* Doc. 3-1.

[the Saw] were ever sold by Rexon in Oklahoma or delivered by Rexon to Oklahoma," and "Rexon d[id] not dictate to Sears where Sears should sell products." *Id*.

Plaintiff does not contest many of Defendant's jurisdictional allegations, but he nonetheless insists that this Court has personal jurisdiction over Defendant. *See generally* Doc. 9. According to Plaintiff, "Rexon manufactures, distributes, and sells its power tools to 'big-box' retailers like Sears and Lowes throughout the U.S." *Id*. at 6. Defendant also advertises over the internet in the United States, maintains a customer service telephone number, and "indemnifies U.S. retailers for product defects." *Id*. Moreover, Plaintiff cites numerous suits in which Rexon was a defendant and either consented to personal jurisdiction or was unable to successfully challenge it. *See id*. at 11–24.

## II.   Personal Jurisdiction: Legal Standards

This Court must have personal jurisdiction over Defendant to adjudicate Plaintiff's claim against it. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014) ("The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."); *Montgomery v. Airbus Helicopters, Inc.*, 2018 OK 17, ¶ 15, 414 P.3d 824, 828 ("*In personam* jurisdiction is the power to render a binding judgment against a defendant."). Plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). In the absence of an evidentiary hearing, Plaintiff must only make a *prima facie* showing of personal jurisdiction to defeat Defendant's motion. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Plaintiff "may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if

true would support jurisdiction over the defendant." *OMI Holdings Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The complaint's well-pled factual content "must be accepted as true if uncontroverted by the defendant's affidavits," and "factual disputes . . . must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). But Plaintiff must "support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 4(k)(1)(A); *Old Republic*, 877 F.3d at 903 ("The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court."). Because Oklahoma's long-arm statute authorizes personal jurisdiction to the limits of the Due Process Clause, *see* 12 O.S. § 2004(F), the Court simply asks whether "the exercise of jurisdiction 'comports with the limits imposed by federal due process.'" *Walden*, 571 U.S. at 283 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see also Monge v. RG Petro-Mach. (Grp.) Co., Ltd.,* 701 F.3d 598, 613 (10th Cir. 2012) ("As Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States

Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." (internal quotation marks and citation omitted)).

Plaintiff argues that this Court has personal jurisdiction over Defendant based on Defendant's contacts with Oklahoma. Contacts-based personal jurisdiction comes in two flavors: general or specific. *See Old Republic*, 877 F.3d at 903. Plaintiff does not argue that this Court may exercise general jurisdiction over Defendant, which requires that Defendant's "affiliations" with the forum state be "so continuous and systematic as to render [it] essentially at home" there. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks and citation omitted).[2] Thus, this Court's analysis shall focus on "specific personal jurisdiction—*i.e.,* jurisdiction specific to this dispute—and its attendant 'minimum contacts' test." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

This Court may exercise specific personal jurisdiction over the out-of-state Defendant if it has "'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (brackets, additional quotation marks, and additional citations omitted).[3] Applying this principle as an analytic framework, the Court asks three questions: (1) did Defendant reach out to Oklahoma?; (2) does Plaintiff's injury

---

[2] "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business," though in "an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co.*, 137 S. Ct. at 1558 (quoting *Daimler AG*, 571 U.S. at 137–38).

[3] "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

arise from or relate to Defendant's Oklahoma contacts (i.e. Defendant's acts of reaching out)?; and, if (1) and (2) are answered affirmatively, (3) would exercising personal jurisdiction over Defendant offend traditional notions of fair play and substantial justice? *See Newsome*, 722 F.3d at 1264.[4]

The threshold inquiry for specific jurisdiction is whether Defendant reached out to the forum—that is, whether Defendant "purposefully directed its activities at residents of the forum state." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("To support specific jurisdiction, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))).[5] For tort claims, like Plaintiff's,

---

[4] The Tenth Circuit has also conceptualized the specific personal jurisdiction inquiry as a two-step process, with the first step having two subparts:

> Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable. The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities.

*Old Republic*, 877 F.3d at 904 (internal quotation marks, citations, brackets, and paragraph breaks omitted).
[5] The Tenth Circuit has noted that, "[i]n the tort context, [it] often ask[s] whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, [it] sometimes ask[s] whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. Regardless of which term is used, purposeful availment and purposeful direction drive at the same principle: "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (citing *Rudzewicz*, 471 U.S. at 475); *see also Old Republic*, 877 F.3d at 904 n.11 ("[T]he terms 'purposeful direction' and 'purposeful availment' denote the same requirement.").

"purposeful direction has three elements: "'(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . .'" *Newsome*, 722 F.3d at 1264–65 (ellipsis original) (quoting *Dudnikov*, 514 F.3d at 1072); *see also Old Republic*, 877 F.3d at 904–08 (providing an exhaustive accounting of "frameworks" used for analyzing "purposeful direction").

Moreover, as it relates to products liability,

> [t]he requirement of purposeful availment . . . precludes personal jurisdiction as the result of random, fortuitous, or attenuated contacts. Although it is foreseeable that a product might travel to a forum state, such foreseeability is not a sufficient benchmark for personal jurisdiction under the Due Process Clause. The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Monge*, 701 F.3d at 613 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (quotation marks, additional citations, and brackets omitted)); *see also Bell Helicopter*, 385 F.3d at 1296 ("Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else."); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir. 1998) ("Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff and generally requires affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." (internal quotation marks, citations, brackets, and ellipses omitted)).[6]

---

[6] If anything, the requisite "minimum contacts" showing has become more stringent, as language from recent Supreme Court caselaw demonstrates:

But purposeful availment alone is not enough to satisfy due process; Plaintiff must, additionally, show that his claim arises from or relates to Defendant's purposeful availment. *See Bartile Roofs*, 618 F.3d at 1160 ("Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities." (internal quotation marks and citations omitted)); *see also Monge*, 701 F.3d at 617 ("For specific jurisdiction, [plaintiff's] injuries must arise out of or relate to activities that [defendant] purposefully directed at residents of the forum."). If there is no "affiliation between the forum and the underlying controversy . . . . specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (internal quotation marks and citations omitted). Plaintiffs in this circuit may

---

The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant . . . . First, the relationship must arise out of contacts that the defendant himself creates with the forum State. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. We have consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. . . . Second, our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.

*Walden*, 571 U.S. at 283–86 (quotation marks, citations, brackets, emphasis, and paragraph breaks omitted).

establish that their claims arise out of or relate to a defendant's forum contacts through either the "proximate cause" approach or the "but-for causation" approach. *Express Servs., Inc. v. King*, No. CIV-15-1181-R, 2016 WL 3172911, at *9 (W.D. Okla. June 6, 2016) (citing *Newsome*, 722 F.3d at 1269). Under the but-for approach, "'any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction.'" *Newsome*, 722 F.3d at 1269 (quoting *Dudnikov*, 514 F.3d at 1078). The proximate-cause approach, by comparison, "'is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claims.'" *Id*. at 1269–70 (quoting *Dudnikov*, 514 F.3d at 1078). But despite their differences, both approaches require a "true causal element" between a defendant's forum contacts and a plaintiff's claim. *Shrader v. Biddinger*, 633 F.3d 1235, 1246 n.8 (10th Cir. 2011) (citing *Dudnikov*, 514 F.3d at 1078–79); *see also Bristol-Myers*, 137 S. Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough."); *Bartile Roofs*, 618 F.3d at 1160 (describing the "arises out of" analysis as determining "whether a nexus exists between the Defendant's forum-related contacts and the Plaintiff's cause of action" (internal quotation marks, citation, and brackets omitted)).

If Plaintiff carries his burden of establishing "minimum contacts," then the burden shifts to Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks and citation omitted). In assessing whether jurisdiction would offend traditional notions of fair play and substantial justice, the Court considers factors

such as "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interests in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states . . . in furthering fundamental social policies." *Id*. (internal quotation marks and citation omitted). The "primary concern" of the personal jurisdiction inquiry "is the burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotation marks and citation omitted).

## III. <u>Discussion</u>

Defendant contends that it lacks minimum contacts with Oklahoma sufficient to support personal jurisdiction. *See* Doc. 3, at 22–25. Plaintiff disagrees. *See* Doc. 9, at 10–19. For the reasons stated below, the Court finds that it lacks personal jurisdiction over Defendant.

### (1) <u>Past Litigation Involving Rexon</u>

Much of Plaintiff's response (Doc. 9) is dedicated to cases involving Rexon as a defendant that took place outside of Oklahoma. Despite the outsized role they play in Plaintiff's argument, these cases are not helpful in answering the threshold question—did Defendant reach out to Oklahoma? To begin, Plaintiff submits as exhibits filings by Rexon in other federal district courts; according to Plaintiff, these filings show consent to service of process and personal jurisdiction or facts indicative of Rexon's purposeful availment of national and state markets. *See* Docs. 9-1–9-6, 9-8–9-10, 9-15–9-20; *see also* Doc. 9, at 7–

19.[7] But these exhibits are simply irrelevant to whether this Court may exercise personal jurisdiction over Defendant in this case. *See Lynch v. Olympus Am., Inc.*, No. 18-cv-00512-NYW, 2018 WL 5619327, at *5 (D. Colo. Oct. 30, 2018) ("[C]onsent [to personal jurisdiction] is limited in its effectiveness to the case in which the party so consented. A consent in one case does not affect the propriety of a court's exercise of personal jurisdiction in another case, even if related . . . ." (citing *Alkanani v. Aegis. Def. Servs., LLC*, 976 F. Supp. 2d 13, 37 n.10 (D.D.C. 2014)). As noted, Plaintiff bears the burden of showing that Defendant purposefully availed itself of Oklahoma's market and that his injuries arise out of or relate to those acts of purposeful availment, those forum contacts. Rexon's filings in other forums, unrelated to and preceding the events of this suit, do not speak to any conduct by Defendant related to Oklahoma, which Plaintiff must show if this Court is to exercise personal jurisdiction over Defendant.

Plaintiff's cited caselaw fares no better. Plaintiff relies heavily on *Fountain v. Rexon Industrial Corp.*, No.: 3:12cv123/MCR/CJK, 2013 WL 12251717 (N.D. Fla. Feb. 4, 2013), which involved a Florida resident's products liability suit against Rexon. *See* Doc. 9, at 13–15. Denying Rexon's motion to dismiss for lack of personal jurisdiction, the *Fountain* court concluded that "Rexon reasonably should have anticipated being haled into court in Florida based on the activities it has directed at [Florida] residents"—such as products,

---

[7] Plaintiff's response includes twenty-three exhibits, which may be grouped as follows: (a) documents (*e.g.* complaints, answers, motions, etc.) filed in federal district courts in Mississippi, Kentucky, Virginia, Illinois, Arizona, California, Ohio, and Utah (Docs. 9-1–9-6, 9-8–9-10, 9-15–9-20); (b) pages from Rexon's website (Docs. 9-7, 9-21); (c) a deposition from a Rexon employee in Illinois state court (Doc. 9-11); (d) filings in *Yang v. Rexon Industrial Corp.*, No. 01:10-cv-251 (Docs. 9-12–9-14); (e) Plaintiff's affidavit (Doc. 9-22); and (f) documents from Shop Your Way Rewards and the United States Consumer Product Safety Commission indicating a recall on a Craftsman table saw made by Rexon (Doc. 9-23).

marketing efforts, a website, and a customer service hotline—"from which . . . the plaintiff's claims arise." *Fountain*, 2013 WL 12251717, at *4.[8] Plaintiff also cites a 2010 order from the Eastern District of Virginia in *Yang v. Rexon Industrial Corp.*, No. 01:10-cv-251, wherein the district court denied Rexon's motion to dismiss and stated, "The Court finds that it has personal jurisdiction over Rexon based on Rexon introducing its products into the Commonwealth of Virginia." Doc. 9-13, at 3; *see also* Doc. 9, at 13–15. The Court need not delve into the reasoning of these decisions because they, like the various litigation documents Plaintiff submits, offer little to the jurisdictional analysis at hand. Rexon may have reached out to Florida and Virginia, and the claims of the *Fountain* and *Yang* plaintiffs may have arisen from those acts of reaching out. But this does not tell the Court whether

---

[8] *Fountain* plays another role in Plaintiff's response. As Plaintiff admits, "[a] substantial portion of [his] argument is based upon [the *Fountain* plaintiff's] successful argument." *See* Doc. 9, at 5 n.1. Perhaps too substantial a portion. A cursory comparison of the *Fountain* plaintiff's response with the response filed in this case reveals that Plaintiff copied or closely paraphrased large sections of the former. *Compare* Doc. 9, at 11–24 *with* No.: 3:12cv00123/MCR/CJK, Doc. 23, at 5–17. This helps to explain why Plaintiff cites so many cases from federal district courts in Florida and from the Eleventh Circuit—even though this Oklahoma district court falls within the Tenth Circuit's jurisdiction. It also explains Plaintiff's peculiar insistence that "Rexon manufactures and distributes hundreds of thousands of power tools throughout the United States, *including Florida*"; or that "Rexon's interactive website advertises its power tools to *Florida* residents"; or that Rexon at one time "distributed, supplied and/or sold . . . Craftsman saw[s] in *California*" and "lease[d] storage space in *Connecticut*." Doc. 9, at 11–12, 17 (emphasis added) (internal quotation marks and citations omitted). Of course, Florida, California, and Connecticut are *not* Oklahoma—the forum with which Defendant must have contacts if this Court is to exercise personal jurisdiction over it. Thus, Plaintiff's citations to past cases involving Rexon do not aid the Court in assessing whether personal jurisdiction is proper here.

    Plaintiff's exhibits also indicate how much of the *Fountain* response Plaintiff copied. Several of Plaintiff's exhibits have two cover pages—the first assigning a number to the exhibit, the second assigning a letter. The letter is the designation corresponding to the *Fountain* plaintiff's response. So, for example, Plaintiff's Exhibit 1—a complaint filed in the Southern District of Mississippi in 2006—is also the *Fountain* plaintiff's Exhibit A. *Compare* Doc. 9-1 ("Exhibit 1") *with* No.: 3:12cv00123/MCR/CJK, Doc. 23-2 ("Exhibit A"). Relatedly, Plaintiff also copied portions of the *Fountain* plaintiff's response without carrying over the cited exhibit. Thus, in footnote 3 of his brief, Plaintiff cites "Exhibit U attached hereto"—but no "Exhibit U" is attached to Plaintiff's brief. *See* Doc. 9, at 13 n.3.

Defendant—here—reached out to Oklahoma (and, furthermore, whether Plaintiff's claim arises from any acts Defendant purposefully directed at Oklahoma).

In reviewing those portions of the parties' briefing that do not address litigation or decisions from other forums, the Court finds only three potential contacts with Oklahoma: the Saw itself, Defendant's website, and Defendant's customer service telephone number.[9] But the Saw does not represent an act purposefully directed at Oklahoma, and to the extent the Court assumes that the website and telephone number count as forum contacts, they are wholly irrelevant to Plaintiff's claim.

### (2)    The Saw: Plaintiff's "stream of commerce" argument

Plaintiff argues that because Defendant distributes and markets power tools, including the Saw, across the United States, it has sufficient minimum contacts with Oklahoma to establish personal jurisdiction. *See* Doc. 9, at 11–15. This argument implicates the "stream of commerce" theory of personal jurisdiction. *See, e.g., World-Wide Volkswagen*, 444 U.S. at 297–98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *see also* 4 Charles Alan Wright and Arthur R. Miller,

---

[9] Plaintiff, in his surreply, argues that Defendant's contacts with Oklahoma are "strong," and he offers as actions purposefully directed at Oklahoma (1) Defendant's reliance on Oklahoma citizens, (2) the "potentially hundreds or thousands of Defendant's table-saws" sold in Oklahoma, (3) authorization for the table saws to be sold in Oklahoma, (4) Defendant's advertisements in Oklahoma, and (5) the fact that Plaintiff was injured and treated in Oklahoma. Doc. 13, at 2–3. Some of these—such as Plaintiff's actions—are irrelevant because they are not acts *by Defendant*. Moreover, none of these purported contacts change the Court's assessment of personal jurisdiction. Defendant's declaration explicitly refutes these alleged acts of reaching out, and Plaintiff fails to respond adequately. Nothing in the record supports these bare assertions, and without more, Plaintiff's surreply does little to affect the Court's conclusions.

*Federal Practice & Procedure* § 1067.4 (4th ed. 2019) (discussing the "stream of commerce" theory). This theory has had its fullest explication in two Supreme Court cases—neither of which produced a majority opinion.

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* the plaintiff, injured in a motorcycle accident, filed a products liability action in California state court against the Taiwanese manufacturer of a tire tube in his motorcycle. 480 U.S. 102, 105–06 (1987). That Taiwanese manufacturer filed an indemnity action against Asahi Metal Industry Co., Ltd. ("Asahi"), a Japanese corporation that manufactured part of the tube. *Id*. After the plaintiff and defendants settled, the only claim remaining was the indemnity action against Asahi. *Id*. Asahi challenged personal jurisdiction, alleging that its sales occurred in Taiwan and that it never contemplated these sales would subject it to lawsuits in California. *Id*. at 106–07.

Writing for a four-justice plurality, Justice O'Connor found that placing products into the stream of commerce was, on its own, insufficient to establish personal jurisdiction:

> The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id*. at 112 (plurality op.) (quotation marks, citations and emphasis omitted).[10] Awareness that its products would end up in California did not, in the plurality's view, constitute "action by Asahi to purposefully avail itself of the California market." *Id*. (plurality op.). Thus, California's exercise of personal jurisdiction over Asahi "exceed[ed] the limits of due process." *Id*. at 113 (plurality op.).[11]

The Supreme Court revisited the stream of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, but remained splintered. *See* 564 U.S. 873 (2011). *Nicastro* involved another products liability suit, this time in New Jersey state court, against J. McIntyre Machinery, Ltd. ("J. McIntyre"), the English manufacturer of a metal-shearing machine. *Id*. at 878 (plurality op.). J. McIntyre contested personal jurisdiction, arguing that it lacked forum contacts because (1) it did not sell its machines to buyers in the United States beyond its American distributor; (2) its employees never attended any scrap metal

---

[10] Justice O'Connor's approach has been called the "stream of commerce plus" test. *See Montgomery*, 2018 OK 17, ¶ 33, 414 P.3d at 832.

[11] Pre-*Asahi* Tenth Circuit caselaw recites a conceptualization of the "stream of commerce" theory closer to Justice O'Connor's "stream of commerce plus" test than more expansive iterations:

> If a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market, then that defendant is subject to jurisdiction there. Placing one's product into the "stream of commerce" with the expectation of distribution into particular areas is the classic example of such an indirect effort. If, however, the defendant's product comes into the forum state as the result of the actions of an unconnected third party or of fortuitous events over which the defendant has no control, then the defendant is not subject to jurisdiction in the forum state. The distinction in these cases is really no more than a refinement of the "purposefully availing" test . . . .

*Fid. & Cas. Co. of N.Y. v. Phila. Resins Corp.*, 766 F.2d 440, 446 (10th Cir. 1985). In advancing this reading of the quoted language above, the Court acknowledges Justice Brennan's citation to *Fidelity* in his *Asahi* concurrence in support of his statement that "most courts . . . have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct." *See Asahi*, 480 U.S. at 117 n.1 (Brennan, J., concurring in part).

conventions in New Jersey; and (3) no more than four J. McIntyre machines ultimately reached New Jersey. *Id*. (plurality op.).

Writing for a four-justice plurality, Justice Kennedy noted that the "stream of commerce" metaphor "does not amend the general rule of personal jurisdiction"—that "[t]he principal inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id*. at 882 (plurality op.). In the stream of commerce context, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id*. (plurality op.) Moreover, the plurality affirmed the "forum-by-forum, or sovereign-by-sovereign" analysis for personal jurisdiction—meaning that "a defendant [could] in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." *Id*. at 884 (plurality op.). Thus, it was insufficient to cite J. McIntyre's *nationwide* sales or marketing efforts to justify *New Jersey's* exercise of personal jurisdiction; absent "conduct purposefully directed at New Jersey," the state was "without power to adjudge the rights and liabilities of J. McIntyre, and its exercise of jurisdiction would violate due process." *Id*. at 886–87 (plurality op.).

The Tenth Circuit has had the opportunity to adopt the plurality approaches from *Asahi* and *Nicastro* or follow a different path; it has thus far declined to choose among competing options. *See, e.g., Monge*, 701 F.3d at 619–620 (discussing *Asahi*'s competing approaches, as explicated by Justices O'Connor and Brennan, but declining to adopt one because the plaintiff's jurisdictional showing was insufficient under both). But while the

Tenth Circuit "has yet to interpret the conflicting opinions of *Asahi* and *Nicastro* to determine the proper framework for a stream-of-commerce analysis," district courts in this circuit have held that "'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *Fischer v. BMW of N. Am., LLC*, No. 18-cv-00120-PAB-MEH, 2019 WL 1331978, at *4 (D. Colo. Mar. 25, 2019); *see also Lynch*, 2018 WL 5619327, at *4 n.5 (failing to find "a single court in the Tenth Circuit that . . . only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself"); *Daniels v. Exal Corp.*, No. CIV-16-1085-HE, 2017 WL 696130, at *2 (W.D. Okla. Jan. 5, 2017) (asserting that the Tenth Circuit follows Justice O'Connor's *Asahi* plurality opinion); *Tarver v. Ford Motor Co.*, No. CIV-16-548-D, 2016 WL 7077045, at *4 (W.D. Okla. Dec. 5, 2016) ("[T]he mere awareness that a product will enter the forum state is not enough; there must be a specific effort on the part of the defendant to target the forum state." (internal quotation marks and citation omitted)); *Lacebark, Inc. v. Sakata Seed Am., Inc.*, No. CIV-12-746-D, 2013 WL 12086778, at *3 (W.D. Okla. Jan. 16, 2013) ("The Tenth Circuit has not held that simply placing a product into a stream of commerce that ends in a forum state is sufficient, by itself, to permit suit within the state." (internal quotation marks and citations omitted)); *Annesley v. Suzlon Energy, Ltd.*, No. CIV-11-820-F, 2012 WL 12848181, at *7 (W.D. Okla. Sept. 24, 2012) (noting that the Tenth Circuit "has a more restrictive view with respect to the stream of commerce theory. . . . [that] requires something more than the mere placement of a product into the stream of commerce for a defendant to have purposefully directed its activities to the forum State"); *Grimes v. Cirrus*

*Indus., Inc.*, 712 F. Supp. 2d 1256, 1262 (W.D. Okla. 2010) ("Plaintiffs . . . do not submit authority indicating that the Tenth Circuit has altered [its] view . . . that minimum contacts in a products liability action cannot be based only on the likelihood that a product will find its way into a state." (citing *Bell Helicopter*, 385 F.3d at 1295–96 (10th Cir. 2004))).[12] Recent Oklahoma caselaw has also suggested a more stringent minimum contacts test, even going so far as to imply that *any* stream-of-commerce approach was abrogated by the United States Supreme Court's *Bristol-Myers Squibb Co.* decision. *See Montgomery*, 2018 OK 17, ¶¶ 31–37, 414 P.3d at 832–34 (citing *Bristol-Myers*, 137 S. Ct. 1773). Thus, while the stream of commerce theory remains in flux, it seems clear that, under all applicable precedent, some modicum of intentionality on the defendant's part is necessary, and an isolated sale of a product in the forum state, without more, is insufficient to establish personal jurisdiction.

Here, Plaintiff offers nothing but an isolated sale and has failed to show any intentional actions by Defendant directed toward Oklahoma. As noted above, Plaintiff

---

[12] As to *Nicastro*, some judges in this district have treated Justice Breyer's concurrence as the case's holding. *See, e.g., Annesley*, 2012 WL 12848181, at *7 ("Justice Breyer . . . . decided the case on narrower grounds and declined to address the *Asahi* split. . . . 'When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'" (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977))). In *Nicastro* Justice Breyer, joined by Justice Alito, concurred in the judgment only, opining that the Court's precedents, without the *Nicastro* plurality's additional filigree, were sufficient to decide that the plaintiff had failed to show that defendant had purposefully availed itself of New Jersey's market. *See Nicastro*, 564 U.S. at 888–90 (Breyer, J., concurring); *see also id.* at 889 ("Mr. Nicastro . . . has shown no specific effort by the British Manufacturer to sell in New Jersey."). But while Justice Breyer's concurrence is limited, it does indicate agreement with the plurality's forum-by-forum personal jurisdiction framework, and it affirmatively registers Justice Breyer's disagreement with "the absolute approach . . . . [u]nder [which] a producer is subject to jurisdiction for a products-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide system that might lead to those products being sold in any of the fifty states." *Id.* at 888–91 (internal quotation marks, citation, and emphasis omitted).

relies extensively on past litigation involving Rexon as a defendant. *See supra* Section III(1). None of this litigation indicates conduct by Defendant purposefully directed at Oklahoma; at most, it shows that products produced by Defendant have been sold by retailers in the United States. Defendant's factual contentions—that it sold the Saw in Shanghai, that it placed no restrictions on how or where the buyer might sell the Saw, that it neither anticipated nor intended the Saw being delivered and sold in Oklahoma—are uncontested by Plaintiff, and Plaintiff's arguments to the contrary, which chiefly center on national and international sales by Defendant, are too vague and too general to indicate the purposeful availment necessary to support specific jurisdiction.[13] Federal district courts in Oklahoma, on similar facts, have not found personal jurisdiction. *See Daniels*, 2017 WL 696130, at *1, *3 ("[A defendant's] ability to foresee that [a distributor] would purchase [its] product and then use it in a finished product that would reach . . . Oklahoma is not enough to establish personal jurisdiction."); *Lacebark*, 2013 WL 12086778, at *3 ("Plaintiff argues that Defendant has a distribution channel that permits nationwide sales of its products and the allegedly infringing products are sold by retailers in Oklahoma. The Tenth Circuit has not held that simply placing a product into a stream of commerce that ends in the forum state is sufficient, by itself, to permit suit within the state."); *Cato v. Bristow Rubber Recycling, LLC*, No. 10–CV–011–GKF–PJC, 2011 WL 1130834, at *4

---

[13] Plaintiff's reliance on *Vermeulen v. Renault*, 985 F.2d 1534 (11th Cir. 1993), *see* Doc. 9, at 15–16, 17, 19, is misplaced. This Court, rejecting other plaintiffs' citation to *Vermeulen*, has held that the Tenth Circuit holds a "more restrictive" view of the stream-of-commerce theory than other circuits. *See Grimes*, 712 F. Supp. 2d at 1261–62 ("While Plaintiffs correctly argue that other jurisdictions have applied the "stream of commerce" analysis to support jurisdiction, they do not submit authority indicating that the Tenth Circuit has altered the view . . . that minimum contacts in a products liability action cannot be based only on the likelihood that a product will find its way into a state.").

(N.D. Okla. Mar. 24, 2011) ("[Defendant] did not purposefully avail itself of the privilege of doing business in Oklahoma when it sold a [product] to [a company] in Michigan."); *de la Paz v. DBS Mfg., Inc.*, No. CIV-07-669-D, 2008 WL 2329126, at *7 (W.D. Okla. June 3, 2008) ("Plaintiff offers no authority, and the Court has located none, to support a contention that purposeful availment can be established by showing that the nonresident defendant did not prohibit a purchaser from later selling its product within the forum state. . . . Where a nonresident defendant relinquishes control over the ultimate location of a product and allows a third party to exercise that control, the nonresident defendant cannot be said to have purposefully directed its activities at the forum state in which the product is later found."). Faced with no factual allegations indicating that Defendant purposefully directed its conduct at the forum state, the Court cannot find personal jurisdiction based on the mere presence of the Saw in Oklahoma.[14]

(3) Rexon's Website and Telephone Hotline: Other Potential Forum Contacts

Plaintiff also cites Defendant's maintenance of a website and a customer service telephone number as conduct purposefully directed at Oklahoma. Doc. 9 at 6. As to

---

[14] Plaintiff also argues that Defendant has sufficient contacts with Oklahoma through its subsidiary, Power Tools Specialists, Inc. ("PTS"). *See* Doc. 9, at 17–19; *see also* Doc. 1, at 2 ("PTS is a subsidiary of Rexon . . . ."). If a corporation completely controls its subsidiary, then the latter's forum contacts may be imputed onto the former. *See DJRJ, LLC v. U-Swirl, Inc.*, No. 16-CV-21-GKF-FHM, 2016 WL 1629288, at *6 (N.D. Okla. April 22, 2016). But even assuming that PTS's contacts are attributable to Defendant, Plaintiff still fails to allege that PTS reached out to Oklahoma. Plaintiff asserts that "PTS is Rexon's marketing subsidiary and distributes Craftsman-branded Rexon tools to Sears to be sold in Sears' retail stores in Oklahoma." Doc. 9, at 18. But the exhibits Plaintiff cites in support of this assertion show only that, in May 2006, Rexon sold a Craftsman saw to PTS to be distributed by Sears in California. *See id.* (citing Docs. 9-15–9-16). Plaintiff does not adequately respond to Defendant's assertion that the Saw at issue was sold to Sears, not PTS, in Shanghai. Indeed, based on the filings before the Court, it seems PTS was not involved with the distribution and sale of the Saw at all. Thus, arguing that PTS's actions are attributable to Defendant is unhelpful, as nothing indicates that PTS purposefully directed any actions at Oklahoma.

websites generally, the Tenth Circuit has not adopted a comprehensive approach to "address[ing] personal jurisdiction in the internet context," though it has noted that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1241; *Lacebark*, 2013 WL 12086778, at *3 ("The Tenth Circuit has held that in the context of internet activity, personal jurisdiction cannot be based simply on access to a website by residents of the forum state."). Rather, the Court draws on the "effects test" utilized in *Calder v. Jones*, 465 U.S. 783 (1984) and "look[s] to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader*, 633 F.3d at 1241; *see also Old Republic*, 877 F.3d at 908 ("In *Shrader*, we cited with approval [a] *Calder*-derived analysis for specific jurisdiction in the internet context. We noted that it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." (internal quotation marks, citations, and emphasis omitted)).[15]

---

[15] In *Shrader*, the Court cited approvingly language from *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002). *ALS Scan's* "test for specific jurisdiction arising out of internet activity" allows a state to "'exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.'" *Shrader*, 633 F.3d at 1240 (quoting *ALS Scan*, 293 F.3d at 714). The Fourth Circuit formulated its test by "adopting and adapting" the sliding-scale model formulated in *Zippo Mfg. Co. v. Zippo Dot Com., Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See ALS Scan*, 293 F.3d at 713–14. In *Zippo*, the Pennsylvania district court differentiated between passive and active web activity in assessing the impact of internet activity on personal jurisdiction analysis:

As with his arguments relating to the Saw and the stream of commerce, Plaintiff's arguments regarding Defendant's website and customer service hotline lack specificity and rely heavily on filings by Rexon in past litigation outside of Oklahoma. However, even if the Court were to assume—without deciding—that Defendant's website and customer service hotline constitute acts purposefully directed at the forum, these "contacts" still do not show that personal jurisdiction is proper because Plaintiff's claim neither arises out of nor relates to them. Plaintiff's affidavit[16] makes this plain. Plaintiff avers that he bought the Saw on November 21, 2014, at Sears in Norman, Oklahoma. Doc. 9-22, at 2.[17] After his accident on November 24, 2014, Plaintiff returned to Sears to notify its employees of

[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1124 (citations omitted). Though it has cited *Zippo*, the Tenth Circuit has thus far declined to affirmatively state whether it agrees with the sliding-scale analysis. *See Old Republic*, 877 F.3d at 908 n.18 (noting that the Tenth Circuit in *Shrader* "declined to take a definitive position on [*Zippo*'s] sliding-scale test"); *Shrader*, 633 F.3d at 1242 n.5 (declining to adopt *Zippo* and noting that courts that have adopted the *Zippo* model "tend to employ it more as a heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis"); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (discussing *Zippo* in the context of general jurisdiction, but declining to adopt it).

[16] The affidavit attached to Plaintiff's response (Doc. 9-22) appears to have been submitted in another case, CJ-2018-693, filed in the District Court of Cleveland County, State of Oklahoma. Doc. 9-22, at 2. Nonetheless, Plaintiff cites it in his response. *See, e.g.*, Doc. 9, at 25.

[17] This date conflicts with Plaintiff's complaint (Doc. 1-2), which asserts that Plaintiff purchased the Saw "in September or October of 2014." Doc. 1-2, at 2. Regardless, the Saw was purchased before Plaintiff's date of injury, November 24, 2014. *See id.*

his injuries and his belief that the Saw caused them. *Id*. What is lacking from this affidavit—along with the complaint and the briefing—is any allegation that Plaintiff consulted Defendant's website or used Defendant's customer service hotline. Indeed, the sale of the Saw does not stem from the website or any broader marketing effort by Defendant, and Plaintiff's initial complaints about his injuries were directed at Sears employees in Oklahoma, not Defendant's customer service hotline. Thus, under either the "but-for causation" or "proximate cause" conceptualization of the "arising out of or relating to" requirement for personal jurisdiction, Defendant's website and customer service hotline—to the extent they constitute forum contacts—are completely unrelated to Plaintiff's claim. Therefore, they cannot sustain personal jurisdiction over Defendant.

(4)     Jurisdictional Discovery

In lieu of dismissal, Plaintiff alternatively seeks leave to engage in jurisdictional discovery "in order to better understand how Rexon's table saw was sold to Plaintiff in Oklahoma by an Oklahoma retailer." Doc. 9, at 24. Whether to allow jurisdictional discovery is within the sound discretion of this Court. *See Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) (noting the "broad discretion" enjoyed by the trial court over matters of jurisdictional discovery). "'A refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant,'" which "'is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (emphasis and brackets omitted) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (additional

quotation marks and citations omitted). But the Court "does not abuse its discretion by denying jurisdictional discovery where there is a 'very low probability that the lack of discovery affected the outcome . . . .'" *Id.* (quoting *Bell Helicopter*, 385 F.3d at 1299). And the "burden of demonstrating legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—is on the party seeking the discovery." *Id.* (brackets and ellipsis omitted) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n. 11 (10th Cir. 2010)).

Plaintiff, as the party seeking jurisdictional discovery, has not carried his burden. First, Plaintiff's request for discovery—like many other sections of his response—is copied virtually *verbatim* from the corresponding pleading in *Fountain*, No.: 3:12cv123/MCR/CJK, leading the Court to wonder how serious Plaintiff's request is. *Compare* Doc. 9, at 23–24 *with* No.: 3:12cv123/MCR/CJK, Doc. 32, at 17–18. Regardless, the probability that a lack of discovery has affected this Court's ruling is very low. Moreover, Plaintiff's request for jurisdictional discovery is too broad and imprecise, and Plaintiff fails to adequately show the Court why discovery would enable him to respond to the issues Defendant raises in its motion. Mere foreseeability that a product will find its way to the forum state is not enough to establish personal jurisdiction, and Plaintiff's request to "better understand" how the Saw came to rest in Oklahoma implicates that very issue. Accordingly, as Plaintiff has failed to make a sufficient showing that jurisdictional discovery is needed, the Court denies his request.

IV.  **Conclusion**

As Plaintiff has failed to make a *prima facie* showing of contacts-based specific personal jurisdiction, the Court need not assess whether exercising personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999) ("Because we conclude that [the plaintiff] has failed to establish that [the defendant] has minimum contacts with the [forum] state . . ., we need not proceed to the next step of the due process analysis—*i.e.* whether the exercise of personal jurisdiction over [the defendant] could offend traditional notions of fair play and substantial justice." (internal quotation marks and citation omitted)). Moreover, because Plaintiff has not established that personal jurisdiction over Defendant would comport with due process, the Court makes no findings as to Defendant's alternative grounds for dismissal: (1) insufficient service of process, pursuant to Fed. R. Civ. P. 12(b)(5), and (2) failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).[18]

---

[18] As to the 12(b)(6) argument, Defendant asserts that Plaintiff's products liability claim is time-barred by the applicable statute of limitations. *See* Doc. 3, at 28–32. Products liability claims are subject to a two-year statute of limitations under Oklahoma law. *Kirkland v. Gen. Motors Corp.*, 1974 OK 52, ¶ 24, 521 P.2d 1353, 1361 (citing 12 O.S. § 95(A)(3)). According to the complaint, Plaintiff suffered his injury on November 24, 2014, but he did not file this action until October 31, 2018—well over two years after his injury. *See* Doc. 1-2. Plaintiff acknowledges this problematic timeline, but he argues that his claim is nonetheless timely because the discovery rule tolled the statute of limitations. *See id.* at 3; Doc. 9, at 24–28. The discovery rule may toll the statute of limitations for a products liability claim under certain circumstances. *See Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, ¶ 12, 689 P.2d 947, 950–51 ("Properly limited, a discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations."); *see also Bryer v. ConocoPhillips, Co.*, 725 F. App'x 645, 648 (10th Cir. 2018) (citing *Watkins v. Cent. State Griffin Mem'l Hosp.*, 2016 OK 71, ¶ 30, 377 P.3d 124, 132) ("The discovery rule tolls the statute of limitations until the plaintiff knows, or in the exercise of reasonable diligence should know, the facts underlying the cause of action."). Plaintiff argues that, under the discovery rule, the statute of limitations was tolled until March 2017, when a recall notice for the Saw was issued. *See* Doc. 1-2, at 3.

    As stated above, the Court lacks personal jurisdiction over Defendant; thus, it could not reach a decision on Defendant's timeliness argument. However, were the Court to consider this issue, it would

Accordingly, the Court GRANTS Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(2) and DISMISSES this action because it lacks personal jurisdiction over Defendant.

IT IS SO ORDERED this 2nd day of May, 2019.

*David L. Russell*

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

---

likely find that Defendant's argument is correct. "When the discovery rule applies, the statute of limitations is tolled until the plaintiff knows or should know of the injury and the cause of the injury." *Bryer*, 725 F. App'x at 648 (citing *Woods v. Prestwick House, Inc.*, 2011 OK 9, ¶ 24, 247 P.3d 1183, 1189–90); *see also Resolution Tr. Corp. v. Grant*, 1995 OK 58, ¶ 8, 901 P.2d 807, 813 ("[The discovery rule] arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause. The purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained . . . ."). Plaintiff's proposed reading of this principle is far too broad; Plaintiff's focus on the recall notice in particular suggests that a claim does not accrue until a defendant admits liability or some quantum of evidence emerges that increases the likelihood of successful litigation. The Court recently rejected an analogous proposed reading of Oklahoma's discovery rule. *See Ake v. Cent. United Life Ins. Co.*, No. CIV-17-937-R, 2018 WL 5986756, at *3 (W.D. Okla. Nov. 14, 2018) (rejecting plaintiff's argument that discovery rule tolled statute of limitations until attorney informed plaintiff she had a potential claim); *see also Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1204 (N.D. Okla. 2009) ("The statute of limitations is not tolled simply because a plaintiff negligently refrains from prosecuting inquiries plainly suggested by the facts. . . . It is irrelevant whether the plaintiff understood that the defendant's actions constituted a legal cause of action as long as the plaintiff knew of the facts which could give rise to such a claim." (internal quotation marks, citations, and brackets omitted)). A similar reading of the discovery rule has also been rejected by the Northern District of Oklahoma. *See Wells v. Lowe's Home Ctrs., Inc.*, No. 06–CV–150–JHP, 2008 WL 2783161, at *2 (N.D. Okla. July 15, 2008) ("[The injured] Plaintiff[] clearly knew of the injury to [his] eye, and that it was caused by [the allegedly defective] saw blade, on November 26, 2003. The only information not known by the Plaintiffs was the identity of the actual manufacturer of the saw blade. Plaintiffs have cited no authority for the proposition that this type of informational deficit is excused by Oklahoma's discovery rule. Therefore, the Court cannot conclude that Oklahoma's discovery rule tolls the statute of limitations when the injured party knows [he] ha[s] been wrongfully injured, has identified the product that caused the injury, and has identified the designer, distributer, and seller of that product, but has not identified the actual manufacturer of the product.").

The complaint makes clear that Plaintiff knew he was injured on November 24, 2014, and that he concluded the Saw caused his injuries. *See* Doc. 1-2, at 2 ("On November 24, 2014, as a result of the Subject Saw's defect Plaintiff was severely injured."); *see also* Doc. 9-22, at 2 (indicating Plaintiff returned to Sears "[s]oon after [he] was injured" to "notif[y] an employee that [he] was injured by a product purchased from [Sears]"). Thus, even if Plaintiff did not know "that the injury he received was due to the table saw unlatching until he received the recall notice in March of 2017," *see* Doc. 9, at 26, he could have pursued a products liability claim immediately following his injury. Consequently, it seems unlikely that the discovery rule would apply here. But because the Court lacks personal jurisdiction over Defendant, it neither resolves these issues nor rules on Defendant's 12(b)(6) motion. Rather, the Court dismisses Plaintiff's complaint on jurisdictional grounds alone.